UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SALIM NAFIS AZ-ZAHID,

                                Plaintiff,                          No. 23-CV-6718 (KMK)

                    v.                                              OPINION & ORDER

C.O. MURPHY, *et al.*,

                                Defendants.

Appearances:

Salim Nafis Az-Zahid
Attica, NY
*Pro se Plaintiff*

S. Cynthia Luo, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for C.O. Murphy*

KENNETH M. KARAS, United States District Judge:

Pro se Plaintiff Salim Nafis Az-Zahid ("Plaintiff"), formerly incarcerated at Sullivan

Correctional Facility ("Sullivan"), brings this Action, pursuant to 42 U.S.C. § 1983, against

Corrections Officer Murphy ("Murphy"), Sergeant Decker, Sergeant Brandon Wallner, and

Nurse Myers (collectively, "Defendants"), alleging that he was subjected to excessive force in

violation of his Eighth Amendment rights upon his return to Sullivan after undergoing back

surgery at Westchester Medical Center. (*See* First Am. Compl. ("FAC") 4–9 (Dkt. No. 18).)

Before the Court is Murphy's Motion for Summary Judgment. (*See* Def.'s Mot. Sum. J. ("Def.'s

Mot.") (Dkt. No. 42).) For the reasons explained below, the Motion is denied.[1] Also before the

_____

[1] In his First Amended Complaint, Plaintiff names Sergeant Decker, Nurse Myers, and
Sergeant Brandon Wallner as defendants in addition to Murphy. (*See* FAC 1.) As explained

Court is Plaintiff's Motion to Amend his First Amended Complaint and his Motion for additional

discovery.  For the reasons explained herein, both Motions are denied.

## I.  Background

### A.  Factual Background

The following facts are taken from Murphy's statement pursuant to Local Civil Rule

56.1, (Def.'s Local Rule 56.1 Statement ("Def.'s 56.1") (Dkt. No. 44)), Plaintiff's response,

(Pl.'s Opp'n to Def.'s Mot. Summ. J. ("Pl.'s Opp.") (Dkt. No. 48)), and the admissible evidence

submitted by the Parties.[2]  The facts are recounted in the light most favorable to Plaintiff, the

non-movant.  *See Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018).

---

below, the Court entered an Order of Service for these individuals on March 27, 2026, (see Order of Service (Dkt. No. 56)), but, to date, they have not yet appeared in this Action, *see generally* Dkt).

[2] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Civ. R. 56.1(a).  The nonmoving party must then submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  *Id.* at 56.1(b).  "If the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule."  *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (citation and quotation marks omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (same). "A pro se litigant is not excused from this rule."  *Brandever v. Port Imperial Ferry Corp.*, No. 13-CV-2813, 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014) (citation and italics omitted).

Here, Murphy filed and served his 56.1 Statement, (*see* Def.'s 56.1), in addition to a statement notifying Plaintiff of the potential consequences of not responding to the Motion, as required by Local Rule 56.2, (*see* Notice of Rule 56.1 Statement (Dkt. No. 46)).  In Plaintiff's response to Murphy's Motion, he lists the numbers of paragraphs that he "concedes to" and "challenges" in Murphy's "request for summary judgment against [P]laintiff."  (Pl.'s Opp. 1.) Because Murphy's memorandum of law in support of the Motion does not have numbered paragraphs, the Court interprets Plaintiff's reply to be a response to Murphy's 56.1 statement, which has numbered paragraphs.  (*See generally* Def.'s 56.1.)

Although "a plaintiff's pro se status does not allow him to rely on conclusory allegations or unsubstantiated speculation to overcome a motion for summary judgment," *Almonte v. Florio*,

### 1. Plaintiff's Surgery and Recovery

Plaintiff was previously incarcerated at Sullivan. (Def.'s 56.1 ¶ 2.) On March 23, 2022, Plaintiff underwent back surgery at Westchester Medical Center and returned to the Sullivan infirmary at or around 10:30 p.m. on March 29, 2022. (*Id.* ¶¶ 4–9.) Upon his return, Plaintiff was informed that he would be placed in a dorm instead of an isolation room.[3] (*Id.* ¶ 11.) Plaintiff's Health Provider Progress Note ("Progress Note") includes an entry from 10:30 p.m. on March 29, 2022, which states that Plaintiff was "upset he will be placed in a dorm" instead of

---

No. 02-CV-6722, 2004 WL 60306, at *3 n.10 (S.D.N.Y. Jan. 13, 2004) (citation and italics omitted), where a plaintiff "verifie[s] his complaint by attesting under penalty of perjury that the statements in the complaint [are] true to the best of his knowledge," the "verified complaint is to be treated as an affidavit for summary judgment purposes," *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *see also Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that the plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"). Here, Plaintiff's Response to Murphy's Summary Judgment Motion includes a signed and dated verification page indicating that Plaintiff declares the contents of those filings to be true under the penalty of perjury, but his Complaint, which only attests to Plaintiff's compliance with Federal Rule of Civil Procedure 11, does not include a similar declaration. (*See* Pl.'s Opp. 5.) Therefore, the Court will accept for purposes of this Motion all admissible facts set forth in any of Plaintiff's verified papers that are based on Plaintiff's personal knowledge and about which Plaintiff is competent to testify, but not his Complaint. *See Colon*, 58 F.3d at 872 ("A verified complaint is to be treated as affidavit for summary judgment purposes . . . provided that it meets the other requirements for an affidavit under Rule 56(e) . . . requiring affidavits to be made on personal knowledge, to set forth facts that would be admissible in evidence, and to demonstrate the affiant's competency to testify to the matters in the affidavit . . . ."); *Johnson v. Doe*, No. 00-CV-3920, 2001 WL 314618, at *1 (S.D.N.Y. Mar. 30, 2001) ("Although a verified complaint may serve as an affidavit for summary judgment purposes . . . mere verification does not transform rhetoric, conclusions, and other non-admissible statements into admissible evidence." (citation omitted)).

[3] In March 2017, Plaintiff was diagnosed with Shy Bladder Syndrome. (Pl.'s Opp. 6.) According to Plaintiff, there is a policy pursuant to which prisoners with this condition are placed in isolation rooms. (Am. Compl. 5.)

3

an "iso[lation] room" and described Plaintiff as "argumentative." (*Id.* ¶ 14.)[4] After Plaintiff returned to the infirmary, Non-party Officer Kavleski made a phone call, (*id.* ¶ 12), and Murphy and another unidentified officer arrived after the call, (*id.* ¶ 13).

According to Plaintiff, at this point, Murphy "got in [Plaintiff's] face," then "grabbed [Plaintiff] by the front of his jacket[,]" "slammed [him] against [the] wall" multiple times and then to the floor before "punch[ing] Plaintiff in the face." (Pl.'s Dep. Tr. ("Pl.'s Tr.") 84:16–25 (Dkt. No. 43-1)*; see also* Pl.'s Inmate Grievance ("Def.'s Ex. D") 1 (Dkt. No. 43-4).) After the alleged assault occurred, Sergeant Decker arrived at the infirmary and, according to Plaintiff, "proceeded to make [him] walk down the hall" notwithstanding his injured and disoriented state. (Pl.'s Tr. 116:13–22.) Plaintiff alleges he then lost consciousness and came to with his "face down on the ground" and some of his stitches and staples from his surgery having come lose. (Pl.'s Tr. 121:5–9, 122:5–11, 123:15–23.) He further claims that he "pushed the emergency call button numerous times, but no [n]urse ever responded[,]" and "[w]hen [the] [i]nfirmary [corrections officer ("C.O.")] did his rounds[,] . . . Plaintiff stopped [him] and explained that he needed to go back to the hospital because the staples . . . [in] Plaintiff's back busted[] or came loose and he was bleeding badly." (Am. Compl. 6; *see also* Pl.'s Tr. 126:2–22.) The infirmary C.O. left and returned with Sergeant Wallner, and Plaintiff reiterated his request to go to the hospital because he had been bleeding. (Pl.'s Tr. 129:14–25.) Plaintiff claims that as he stood up, blood had soaked through his clothes and began to drip onto the floor, and he requested to return to the hospital, but Sergeant Wallner told Plaintiff that it was 2:00 a.m. and he would be

---

[4] The Court notes that the evidence in the record suggests that Plaintiff was upset about not being placed in an isolation room for the night prior to his surgery. (*See* Pl.'s Tr. 81:16–83:24.) However, because both Parties agreed to the characterization of the incident as stemming from Plaintiff being placed in a dorm room upon his return from the hospital, (*see* Def.'s 56.1 ¶ 14; Pl.'s Opp. 1), the Court accepts this version of events.

4

seen by a nurse in the morning.  (*Id.* 86:19–87:10.)  Plaintiff claims Sergeant Wallner said he did not know anything about the alleged assault and walked away.  (*Id.* 87:11–15.)  Plaintiff continued to experience pain, and as "the [infirmary C.O.] did another round," Plaintiff "went back to the door and told [the C.O.] that he was continuously bleeding [and] needed to see a nurse."  (*Id.* 87:16–21.)

At 3:00 a.m., Nurse Myers offered Plaintiff pain medication after Plaintiff explained his circumstances to her.  (*Id.* 87:22–88:2.)  However, Nurse Myers told Plaintiff she could not open the door and placed the pills on the floor and slid them under the door to Plaintiff, even though she "knew that [he] was in pain and that [he] was not able to bend down."  (*Id.* 88:3–8.)  When the shift changed, Plaintiff informed non-party Officer Wilson that he had been assaulted the night before and needed medical attention.  (*Id.* 88:9–18.)  Plaintiff "showed [Officer Wilson] . . . blood on the chair and the floor" and on Plaintiff's clothes, and Officer Wilson "[s]ent one of the porters to . . . clean it up."  (*Id.* 88:14–19.)  Shortly thereafter, an unidentified nurse came into Plaintiff's room to change his bandage and give him medication, and Plaintiff told her about what had happened.  (*Id.* 88:20–89:7.)

## 2.  Plaintiff's Use of Administrative Remedies

On June 9, 2022, Plaintiff submitted a document titled Inmate Grievance Complaint (the "Grievance").  (Def.'s 56.1 ¶ 44 (citing Def.'s Ex. D at 2).)  He claims he would have submitted the Grievance earlier, but he had no means to write it out and send it in, despite repeated requests for a pencil and paper while in the infirmary.  (*Id.* ¶ 49 (citing Def.'s Ex. D at 3; Pl.'s Tr. 92:12–25).)  Plaintiff's Grievance was rejected as untimely.  (*Id.* ¶ 51 (citing Pl.'s Tr. 92:19–25, 93:19–21).)  The Inmate Grievance Program ("IGP") Supervisor informed Plaintiff that under extenuating circumstances, he could extend the deadline to file a grievance to 45 days, but after

that time, there was nothing he could do. (*Id.* ¶ 53 (citing Pl.'s Tr. 93:22–94:2).) The IGP

Supervisor advised Plaintiff that he could "grieve him," that is, grieve the IGP Supervisor's

denial of an exception to the time limit, but Plaintiff testified that he "chose not to grieve [the

IGP Supervisor]" because he felt that the supervisor had not personally done anything wrong.

(Pl.'s Tr. 93:22–94:5.)[5]

B.  Procedural History

Plaintiff filed his initial Complaint on July 28, 2023. (Dkt. No. 1.) The Court granted

Plaintiff in forma pauperis ("IFP") status on September 11, 2023. (Order Granting IFP Appl.

(Dkt. No. 5).) On March 7, 2024, the Court ordered service on Murphy and entered a *Valentin*

Order directing the New York State Attorney General (the "OAG") to ascertain the identity,

badge number, and address of "Sgt. John Doe" and any other Department of Corrections and

Community Supervision ("DOCCS") personnel involved in the events alleged in Plaintiff's

Complaint. (*See* Order of Service 1–2 (Dkt. No. 7).) On May 31, 2024, the OAG identified

Sergeant Brandon Wallner as "Sgt. John Doe" and provided his contact information to the Court

and Plaintiff.[6] (Letter from Cynthia Luo, Esq. to Court (May 31, 2024) (Dkt. No. 15).) On June

---

[5] As discussed in Section II.B, Plaintiff now claims that the grievance process was effectively unavailable to him because the IGP Supervisor failed to explain the process by which he could challenge the denial of his Grievance as untimely. (*See* Pl.'s Opp. 3.)

[6] In response to the Court's *Valentin* Order, the OAG requested a copy of Plaintiff's DOCCS medical records to see if there were any notes from the date of the alleged incident that could identify which DOCCS staff members, if any, were present on that day. (Letter from Cynthia Luo, Esq. to Court (Sept. 18, 2024) (Dkt. No. 29).) Plaintiff claims this conduct constitutes a violation of his Health Insurance Portability and Accountability Act ("HIPAA") rights. (Letter from Pl. to Court (filed Sept. 5, 2024) (Dkt. No. 28); Pl.'s Opp. 4.) However, state regulations permit the OAG to obtain Plaintiff's medical records. *See* 7 N.Y.C.R.R. § 5.24(b) (providing that "for the purpose of providing legal services on behalf of the State . . . [inmate medical] records may be released to the Office of the Attorney General . . . ."); *see also* *McFadden v. Schneiderman*, 54 N.Y.S. 3d 610, 610 (Sup. Ct. 2016) (table case) (dismissing the plaintiff's claim against the OAG for releasing his medical records to the defendants for failure

6, 2024, the Court granted Murphy's request to file a Motion to Dismiss and set a briefing schedule.  (*See* Order (Dkt. No. 17).)

On June 14, 2024, Plaintiff filed his First Amended Complaint, which added Sergeant Decker, Nurse Myers, and Sergeant Brandon Wallner as Defendants.  (Am. Compl. 3.) However, on June 16, 2024, Plaintiff requested leave to submit a Second Amended Complaint. (Letter from Pl. to Court (filed June 24, 2024) (Dkt. No. 20).)  Before the Court could address this request, Murphy filed an answer to Plaintiff's Amended Complaint.  (Answer (Dkt. No. 19).) On July 18, 2024, the Court granted Plaintiff leave to file a Second Amended Complaint by August 2, 2024, (Dkt. No. 22 at 2), but Plaintiff did not do so, (*see generally* Dkt.)  The Court also granted Murphy's request to renew his Motion to Dismiss Plaintiff's Amended Complaint. (Dkt. No. 22 at 2.)  On September 5, 2024, the Court held a telephonic initial conference and entered a Case Management and Scheduling Order.  (Dkt. (minute entry for Sept. 5, 2024); Case Management & Scheduling Order (Dkt. No. 27).)

On February 4, 2025, Murphy filed a letter motion requesting leave to file a Motion for Summary Judgment, (*see* Letter from Cynthia Luo, Esq. to Court (Feb. 4, 2025) (Dkt. No. 40)), which the Court granted, (*see* Order (Dkt. No. 41)).  On May 28, 2025, Murphy filed the instant Motion along with supplemental papers.  (*See* Notice of Mot. (Dkt. No. 42); Def.'s Mem. Law Supp. Mot. ("Def.'s Mem.") (Dkt. No. 45); Luo Decl. (Dkt. No. 43); Def.'s 56.1; Def.'s 56.2.) Plaintiff filed his Opposition on April 30, 2025.  (Pl.'s Mem. of Law in Opp'n to Mot. ("Pl.'s Opp.") (Dkt. No. 48).)  Murphy filed his Reply on July 11, 2025.  (Def.'s Reply Mem. of Law in

---

to state a claim under state regulations and federal law).  Further, Plaintiff cannot state a claim under HIPAA because the statute does not create a private right of action, and the enforcement of HIPAA is exclusively reserved for the Secretary of Health and Human Services.  *See Rzayeva v. United States*, 492 F. Supp. 2d 60, 83 (D. Conn. 2007) (collecting cases).

Supp. of Mot. ("Def.'s Reply Mem.") (Dkt. No. 52); Luo Decl. Supp. Summ. J. ("Second Luo Decl.") (Dkt. No. 53).)  On August 14, 2025, Plaintiff filed a Sur-Reply in response to Murphy's Response.  (*See* Pl.'s Sur-Reply (Dkt. No. 54).)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cnty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same).  "It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 521 (S.D.N.Y. 2015) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility

8

that his allegations [are] correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . ."). And "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Lab'ys Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). However, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in

9

evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

As a general rule, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (noting that at the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the matter"); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (quotation marks omitted)).  Where the evidence presents "a question of 'he said, she said'" the court "cannot . . . take a side at the summary judgment stage." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010); *see also Kassel v. City of Middletown*, 272 F. Supp. 3d 516, 535 (S.D.N.Y. 2017) (noting that "it is not the role of the [c]ourt at summary judgment to resolve [a] factual clash"); *Bale v. Nastasi*, 982 F. Supp. 2d 250, 258–59 (S.D.N.Y. 2013) (stating that "[w]here each side . . . tells a story that is at least plausible and would allow a jury to find in its favor, it is for the jury to make the credibility determinations and apportion liability, and not for the court.").  And, even if the non-movant's evidence is "thin, [a non-movant's] own sworn statement is adequate to counter summary judgment." *Scott v. Coughlin*, 344 F.3d 282, 290–91 (2d Cir. 2003) (holding that "[t]he credibility of [Plaintiff's] statements and the weight of contradictory evidence may only be evaluated by a finder of fact.").

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988); *accord Mercado v. Div. of N.Y. State Police*, No. 96-

CV-235, 2001 WL 563741, at *7 (S.D.N.Y. May 24, 2001) (same), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (italics and quotation marks omitted).  Moreover, "the failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment."  *Vt. Teddy Bear Co.*, 373 F.3d at 244; *see also Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) (explaining that "an examination of the legal validity of an entry of summary judgment should . . . be[] made in light of the opposing party's pro se status" (italics omitted)).  "Nonetheless, proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence . . . are insufficient to overcome a motion for summary judgment."  *Houston v. Teamsters Loc. 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 351 (E.D.N.Y. 2014) (alterations, italics, and quotation marks omitted); *see also Flores v. City of New York*, No. 15-CV-2903, 2017 WL 3263147, at *2 (S.D.N.Y. July 31, 2017) (same).

B.  Failure to Exhaust

Murphy argues he is entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), prior to bringing this Action.  (Def.'s Mem. 6–9.)

The PLRA provides that "[n]o action shall be brought with respect to prison conductions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion remedy applies to all personal incidents while in prison, *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding exhaustion is required for "all inmate suits

about prison life, whether they involve general circumstances or particular episodes"); *see also Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (same), and includes actions for monetary damages despite the fact that monetary damages are not available as an administrative remedy, *Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding exhaustion is required "regardless of the relief offered through administrative procedures"). Moreover, the PLRA mandates "'proper exhaustion'—that is, 'using all steps that the agency holds out, and doing so properly,' . . . [which] entails . . . 'completing the administrative review process in accordance with the applicable procedural rules.'" *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (alteration adopted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88, 90 (2006)).

The Second Circuit has made it clear that "administrative exhaustion is not a jurisdictional predicate," but rather, "failure to exhaust is an affirmative defense." *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (citation omitted), *overruled in part on other grounds by Ross v. Blake*, 578 U.S. 632 (2016). Accordingly, "defendants bear the burden of proof[,] and prisoner plaintiffs need not plead exhaustion with particularity." *McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003); *see also Miller v. Bailey*, No. 05-CV-5493, 2008 WL 1787692, at *3 (E.D.N.Y. Apr. 17, 2008) (explaining that the exhaustion requirement "must be pleaded and proved by a defendant" (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007))). Further, "'[a] court may not dismiss for failure to exhaust administrative remedies unless it determines that such remedies are available.'" *Rossi v. Fischer*, No. 13-CV-3167, 2015 WL 769551, at *4 (S.D.N.Y. Feb. 24, 2015) (quoting *Abney v. McGinnis*, 380 F.3d 663, 668 (2d Cir. 2004)). The Second Circuit has made clear that "[w]hether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law," and "defendants bear the initial burden of establishing, by pointing to legally sufficient sources such as statutes,

12

regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." *Hubbs v. Suffolk Cnty. Sherriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (citation, alteration, and internal quotation marks omitted); *see also Thomas v. Aldi*, No. 18-CV-1350, 2022 WL 16716160, at *7 (D. Conn. Nov. 4, 2022) (same).

In *Ross v. Blake*, 578 U.S. 632 (2016), the Supreme Court recognized "three kinds of circumstances in which an administrative remedy, although officially on the books," is unavailable, excusing the PLRA's exhaustion requirement. *Id.* at 643. First, "an administrative procedure is unavailable when . . . it operates as a simple dead end—with officials unable or unwilling to provide any relief to aggrieved inmates." *Id.* (citation omitted). "Next, an administrative scheme" is unavailable when it is "so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643–44. Lastly, an administrative remedy is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Plaintiff's initial response to Murphy's argument about Plaintiff's failure to exhaust is that he could not file a timely grievance because he was in the infirmary for over two months and did not have access to a "grievance representative" or a pencil and paper, despite requests for access to both. (Def.'s Ex. D at 3; Pl.'s Tr. 92:12–25.) Plaintiff was ultimately able to file his Grievance on June 9, 2023. (*See* Def.'s 56.1 ¶ 44 (citing Def.'s Ex. D at 1).) Although his June 9, 2023 Grievance was denied as untimely, Plaintiff previously testified that the IGP Supervisor informed him that he could challenge the denial by filing a grievance against the supervisor, which he chose not to do because he did not feel the supervisor had personally done anything wrong. (*See* Pl.'s Tr. 94:3–5.) Despite this assertion, in his Opposition to the instant Motion,

13

Plaintiff claims for the first time that the IGP Supervisor failed to explain the process by which he could challenge the denial of his Grievance as untimely, (*see* Pl. Opp. 3), which the Court interprets as Plaintiff alleging the grievance process was effectively unavailable to him.

In response, Murphy first argues that Plaintiff has no basis to claim that he needed someone to explain the grievance process to him given his substantial history of exhausting the grievance procedure before the events of the instant Action. (*See* Def.'s Reply 6.) While courts have found that a plaintiff's filing of previous grievances "demonstrate[es] his familiarity with the [grievance] procedures, as well as their availability[,]" *Powell v. Schriro*, No. 14-CV-6207, 2015 WL 7017516, at *8 (S.D.N.Y. Nov. 12, 2015), and is the "death knell" of a plaintiff's claim that the grievance process was unavailable to him, *Hall v. Annucci*, No. 19-CV-5521, 2022 WL 3903255, at *7 (S.D.N.Y. Aug. 30, 2022) (collecting cases), *aff'd*, No. 22-2031, 2023 WL 7212156 (2d Cir. Nov. 2, 2023), Plaintiff's grievance history does not indicate that he had previously appealed the denial of a grievance as untimely, (*see* Luo Supp. Decl., Ex. C (Dkt. No. 53)). Therefore, the Court cannot conclude that the grievance process was available to Plaintiff based on his prior experience exhausting the grievance procedure. *See Ortiz v. Annunci*, No. 17-CV-3620, 2019 WL 1438006, at *9 (S.D.N.Y. Mar. 29, 2019) (finding the plaintiff's "well-developed understanding of the grievance process" did not foreclose the possibility that his failure to exhaust his administrative remedies was excused under *Ross* because the instant action did not involve the plaintiff trying to file a grievance under ordinary circumstances).

Murphy also points out that Plaintiff's late-breaking assertion directly contradicts his prior sworn testimony and earlier characterizations of his interaction with the IGP Supervisor. (Def.'s Reply 6–7 (citations omitted).) In light of the "special solicitude" afforded to pro se litigants, "which includes reading their filings 'to raise the strongest arguments that they

14

suggest[,]'" *Darley v. United States*, No. 22-CV-714, 2025 WL 1159518, at *3 (S.D.N.Y. Apr. 21, 2025) (quoting *Mortimer v. City of N.Y.*, No. 15-CV-7168, 2018 WL 1605982, at *9 (S.D.N.Y. Mar. 29, 2018)), the Court permits Plaintiff's Opposition to raise this new argument despite Plaintiff not asserting it in his previous filings and deposition, *see Price v. Reilly*, 697 F. Supp. 2d 344, 351 n.7 (E.D.N.Y. Mar. 8, 2010) (allowing a pro se plaintiff to assert an explanation for not proceeding with his grievance in his opposition to defendants' summary judgment despite not offering the explanation during his deposition); *see also Patterson*, 375 F.3d at 219 ("[A] verified pleading, to the extent that it makes allegations on the basis of the plaintiff's personal knowledge, and not merely on information and belief, has the effect of an affidavit and may be relied on to oppose summary judgment.").

Lastly, Murphy contends that the instant Action is akin to *Ferguson v. Mason*, No. 19-CV-927, 2021 WL 862070 (N.D.N.Y. Jan. 7, 2021), *report & recommendation adopted*, 2021 WL 531968 (N.D.N.Y. Feb. 12, 2021), where the court found the plaintiff's failure to exhaust was not excused when his grievance was rejected as untimely and he chose not to appeal the denial after the procedure for doing so was explained to him. (*See* Def.'s Reply 8; Def.'s Mem. 8–9.) While there are factual similarities between *Ferguson* and the instant Action, Murphy overlooks one important difference—the plaintiff in *Ferguson* was afforded the opportunity for an exhaustion hearing. *See* 2021 WL 862070, at *1.

At present, before the Court is a genuine dispute of fact as to exhaustion, where Plaintiff attests that the grievance process was unavailable to him during his time in the infirmary and/or due to the IGP Supervisor's failure to explain the process for appealing the denial of his grievance as untimely by filing a second grievance against the Supervisor, (*see* Pl.'s Opp. 3; Pl.'s Sur-Reply ¶ 6), and Murphy points to other evidence on the record to argue the grievance

process was available to Plaintiff and he failed to exhaust it, (*see* Def.'s 56.1 ¶¶ 51–55). In this situation, an exhaustion hearing is necessary to resolve the issue of whether the grievance process was unavailable to Plaintiff. *See Messa v. Goord*, 652 F.3d 305, 308–10 (2d Cir. 2011) (holding PLRA exhaustion is a "matter[] of judicial administration," and the court, not a jury, determines factual disputes regarding an inmate's alleged failure to exhaust).

      C. Motion to Amend and Request for Additional Discovery

Plaintiff also requests leave to amend his complaint and seek additional discovery following the filing of the instant Motion. (*See* Letter from Pl. to Court (May 22, 2025) (Dkt. No. 50); Pl.'s Sur-Reply 4–5.) For the reasons set forth below, the Court denies both of these requests.

On July 18, 2024, the Court granted Plaintiff's request to file a Second Amended Complaint, (*see* Order 2 (Dkt. No. 22) (granting Plaintiff's request to file a Second Amended Complaint)), but Plaintiff did not do so, (*see generally* Dkt.). Plaintiff did not provide an explanation for why he did not amend his complaint when he had the opportunity to do so. Now, after the close of discovery and the filing of Murphy's Motion, Plaintiff wishes to amend his complaint to add two new defendants. Plaintiff's request is untimely because it was filed almost five months after Murphy's Motion for Summary Judgment, and over two years after the original complaint was filed, with no explanation for the delay. *See Rolehr v. Brookdale Univ. Hosp. & Med. Ctr.*, No. 03-CV-3576, 2007 WL 210427, at *3 (E.D.N.Y. Jan. 26, 2007) (denying the plaintiff's request to amend his complaint as untimely when it was filed almost two months after the court heard arguments on the motion for summary judgment and two years after the original complaint was filed). Additionally, allowing Plaintiff to amend his complaint at this time would unduly prejudice Murphy and the other Defendants. "In gauging prejudice, a court considers,

'among other factors, whether an amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute.'" *Agoliati v. Block 865 Lot 300 LLC*, No. 19-CV-5477, 2021 WL 3193239, at *4 (E.D.N.Y. Apr. 20, 2021) (quoting *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008)), *report and recommendation adopted*, 2021 WL 3188397 (E.D.N.Y. July 27, 2021). "[R]equests to amend that come at a late stage of the litigation, after discovery has closed and a motion for summary judgment has been filed, are more likely to be prejudicial." *Carroll v. Trump*, 88 F.4th 418, 431 (2d Cir. 2023).

Moreover, fact discovery in the instant Action closed over six months before Plaintiff filed his request to amend, (*see* Case Management and Scheduling Order 1 ("All fact discovery is to be completed no later than [January 3, 2025].")), and courts have routinely denied leave to amend when a plaintiff seeks to add new parties and/or claims after the close of discovery. *See, e.g.*, *Marom v. Town of Greenburgh*, No. 20-CV-3486, 2022 WL 17584279, at *4 (S.D.N.Y. Dec. 12, 2022) ("Adding a party now would require re-opening discovery and staying consideration of the pending cross-motions for summary judgment, thereby prejudicing [d]efendants at this late stage of the litigation."); *Wynn v. N.Y.C. Housing Auth.*, No. 14-CV-2818, 2017 WL 933094, at *3 n.1 (S.D.N.Y. Mar. 8, 2017) ("[P]ermitting [p]laintiffs to add a new claim (or claims) nine months after the close of discovery and following extensive summary judgment briefing would be unduly prejudicial to [d]efendants." (citation omitted)); *Hartley v. Rubio*, 785 F. Supp. 2d 165, 187 (S.D.N.Y. 2011) (finding plaintiff's proposed amendment would "prejudice defendants" because "[a]fter two-and-a-half years of litigation and after the close of discovery, defendants would be obligated to engage in additional discovery regarding new theories, new facts, and new parties."). Thus, it is indisputable that granting Plaintiff's

17

request to amend would lead to further delay in the adjudication of the instant Action, which was filed over two years ago. (*See generally* Dkt.) And here, Plaintiff's proposed amendments— including adding new defendants—would introduce real delay and require reopening discovery. *See Kontarines v. Mortg. Elec. Registration Sys.*, No. 15-CV-2206, 2016 WL 3821310, at *4 (E.D.N.Y. July 12, 2016) ("[A]llowing [the] plaintiff to add entirely new claims and new defendants would materially expand the litigation and would necessarily prejudice the existing defendant, as it would require the reopening of fact discovery[,] . . . [and] would . . . increase defendant's litigation expenses, . . . [and] further delay . . . this matter."). And, as Murphy points out, the viability of any claims Plaintiff wishes to assert against the proposed additional defendants will depend on the outcome of the PLRA exhaustion issue, (*see* Def.'s Reply 5), and allowing Plaintiff to amend his complaint will only delay the Court's exhaustion hearing.

In sum, "courts in the Second Circuit have consistently denied leave to amend . . . where discovery was complete and motions for summary judgment have been filed[,]" *Bernstein v. Village of Wesley Hills*, 95 F. Supp. 3d 547, 588 (S.D.N.Y. 2015) (collecting cases), and the Court sees no reason to do any differently here, especially when Plaintiff was previously given the chance to amend his complaint and failed to do so.

Plaintiff's request for additional discovery materials lacks merit because the requested materials are irrelevant to the instant Motion because Murphy, the only Defendant to be served in this Action, does not possess the information that Plaintiff seeks. (*See* Pl.'s Opp. ¶ 1 (seeking interrogatory answers from Defendants Decker, Wallner, Myers, and four non-parties); Pl.'s Sur-Reply 4–5 (same).) In light of Plaintiff's alleged difficulties in serving the additional Defendants, the Court has entered an Order of Service requesting the U.S. Marshals assist Plaintiff in doing so. (*See* Order of Service (Dkt. No. 56).) Once these Defendants have been

18

served, Plaintiff can seek relevant discovery from them pursuant to Rule 33.2 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, which governs standard discovery in pro se cases brought by incarcerated individuals.

### III.  Conclusion

For the foregoing reasons, Murphy's Motion for Summary Judgment is denied, and Plaintiff's Motion to Amend and requests for additional discovery are also denied.  The Court will hold a telephonic conference on May 28, 2026, at 12:00 PM.  The Clerk of Court is respectfully requested to terminate the pending motion at Dkt. No. 42 and mail a copy of this order to Plaintiff.

SO ORDERED.

DATED:      March 31, 2026
            White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

19